UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER MARK PARIS, and
OXEBRIDGE QUALITY RESOURCES
INTERNATIONAL, LLC

Plaintiffs

v.

WILLIAM LEVINSON,
LEVINSON PRODUCTIVITY
SYSTEM, PC, a Pennsylvania
Corporation, MARC TIMOTHY
SMITH, individually, and d/b/a
CAYMAN BUSINESS SYSTEMS,
GUBERMAN PMC, a Connecticut
Corporation, DARYL GUBERMAN,
an Individual, DONALD LABELLE, an Individual

Defendants

Case No. 8:19-cv-00423

Judge William F. Jung
Magistrate Judge Sean P. Flynn

_____/

**PLAINTIFF CHRIS PARIS AND OXEBRIDGE QUALITY RESOURCES RESPONSE
AND MEMORANDUM IN OPPOSITION TO THE MOTIONS TO DISMISS FILED BY
DARYL GUBERMAN AND DONALD LABELLE**

COMES NOW the Plaintiffs, Christopher Mark Paris and Oxebridge Quality Resources

International, LLC, through undersigned counsel, (collectively herein referred to as "Plaintiffs")

and hereby files this response to the Motions to Dismiss filed by Daryl Guberman and Donald

Labelle ("Defendants"), and in support thereof states as follows:

**PRELIMINARY STATEMENT**

Plaintiff Chris Paris and Oxebridge Quality Resources (hereinafter "Plaintiffs") submits

this memorandum of law in opposition to the motion by the Defendants to dismiss the complaint.

**FACTUAL BACKGROUND**

1.  The Plaintiffs filed a lawsuit for COUNT I: DEFAMATION/LIBEL, COUNT
II: TORTIOUS INTERFERENCE WITH A BUSINESS INTEREST, COUNT III:
COUNT III -- FEDERAL ANTI-CYBERSQUATTING (ANTI-CYBERPIRACY) (15
U.S.C. § 1125(D)(1)(A)), COUNT IV - TRADEMARK INFRINGEMENT (15 U.S.C. §
1114), COUNT V FLORIDA UNFAIR COMPETITION, COUNT VI
MISREPRESENTATION OF COPYRIGHT CLAIMS UNDER THE DIGITAL
MILLENNIUM COPYRIGHT ACT ("DMCA") 17 U.S.C. § 512, COUNT VII: ABUSE
OF PROCESS, COUNT VIII: WIRETAPPING, VIOLATION OF FLORIDA STAUTE
934.03, COUNT IX - INTERCEPTION OF ELECTRONIC COMMUNICATIONS IN
VIOLATION OF THE WIRETAP ACT, 18 U.S.C. § 2511(1)(A), COUNT X: FOR
DISCLOSURE OF INTERCEPTED ELECTRONIC COMMUNICATIONS IN
VIOLATION OF THE WIRETAP ACT, 18 U.S.C. § 2511(1)(C), COUNT XI
(INVASION OF PRIVACY- INTRUSION UPON SECLUSION), and COUNT XII:
CIVIL CONSPIRACY.

2.  Since 1999 Plainiff Chris Paris has run Oxebridge, which offers training for
the ISO 9000, a family of quality management systems, which helps companies obtain
certifications necessary for third party audits within particular industries. Paris also runs a
popular blog and news site related to the ISO 9000.

3.  Paris is also a published author and has published numerous books on the ISO
standards. Paris has been published in third party journals including Quality Systems
Update, Japan Today and InfoSec Island, and has been cited in peer-reviewed journals
such as the British Medical Journal (BMJ) as well has contributed reporting go

mainstream reporting outlets such as Marketwatch, for his work related to ISO certification industry oversight and reporting.

    4. Daryl Guberman and Donald Labelle co-manage the company Guberman PMC LLC, and Donald LaBelle operates the company Industrial PR.Net a/k/a Manufacturing Partners and have both systematically targeted Plaintiffs' business operations.

    5. Paris has been trolled by competitors such as the Defendants who have systematically attempted to destroy his business operations by defaming him in every possible forum, and illegally taping a conversation with him, and publishing the contents therein online.

## STANDARD OF LAW

A motion to dismiss is appropriate when it is demonstrated "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For the purpose of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *Hishon v King & Spaulding*, 467 U.S. 69, 73 (1984). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

Courts view Rule 12(b)(6) motions with disfavor. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("We hasten to add that [a 12(b)(6) motion] is viewed with disfavor and rarely granted."). A complaint should be upheld if it is "supported by [a] showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp.*

v. *Twombly*, 550 U.S. 544, 563 (2007). When considering a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff. *Timson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008). Additionally, when considering a motion to dismiss the court should consider the plaintiff's allegations as true. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

As courts throughout Florida have consistently held, *Twombly* and *Iqbal* do not change the fundamental analysis that a district court engages in when ruling on a motion to dismiss, *i.e.*, accepting all plausible allegations as true and determining whether the complaint contains, a short and plain statement of the claim showing that the pleader is entitled to relief." *Smith v. Wm. Wrigley Jr. Co.*, 663 F.Supp.2d 1336, 1341 n. 3 (S.D. Fla. 2009). The issue for consideration on a motion to dismiss is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986). If a defect can be cured by amendment, leave to amend should be freely granted. *Forman v. Davis*, 371 U.S. 178, 182 (1962); *Ferrell Law, P.A. v. Crescent Miami Center, LLP*, 313 Fed. Appx. 182, 186 (11th Cir. 2008); Fed. R. Civ. P. 15(a)(2).

I.   **THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS CASE AND DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED**

To survive a motion to dismiss pursuant to Rule 12(b)(1), Plaintiffs must "state a plausible claim that they have suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." Doe v. Trump, 275 F. Supp. 3d 167, 192 (D.D.C. 2017) (quoting Food & Water Watch, Inc. v. Vilsack, 808 F.3d 905, 913 (D.C. Cir. 2015)). In considering whether a plaintiff has alleged Article III standing, the Court "must . . . assume that on the merits the plaintiffs would be successful in their claims," and must accept the factual allegations in the complaint as true. Schintzler v.

8

U.S., 761 F.3d 33, 40 (D.C. Cir. 2014) (quoting Parker v. District of Columbia, 478 F.3d 370, 377 (D.C. Cir. 2007)); Warth v. Seldin, 422 U.S. 490, 501 (1975). A plaintiff bears the burden of proof to satisfy Rule 12(b)(1), but the Court must still "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." Am. Nat. Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted). The Court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of subject matter jurisdiction, but so long as those materials are considered only for purposes of evaluating subject matter jurisdiction under Rule 12(b)(1), the motion to dismiss is not converted to a motion for summary judgment. See, e.g., Caesar v. U.S., 258 F. Supp. 2d 1, 2-3 (D.D.C. 2003) (Sullivan, J.).

To establish subject matter jurisdiction, the Court need find that only one of the Plaintiffs has standing under Article III of the U.S. Constitution. Mendoza v. Perez, 754 F.3d 1002, 1010 (D.C. Cir. 2014). In order to have standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).

## ARGUMENT

Defendants Guberman and Labelle have submitted almost identical Motions to Dismiss, which contain seven concise paragraphs, mostly roughly one sentence long, in support thereof. If the Court does construe that the Defendants are moving to dismiss the complaint for 1) Lack of Subject Matter Jurisdiction, 2) lack of personal jurisdiction, and 3) failure to state a claim for upon which relief can be granted, those defenses all fail. All other statements included in the

Motions to Dismiss simply deny the allegations contained within the four corners of the complaint, and therefore should be disregarded since they are arguing the case on the merits. Plaintiffs respond in opposition arguing that (1) the subject matter jurisdiction is appropriate, 2) Defendants are subject to this Court's jurisdiction, and 3) Plaintiffs' Complaint does state a claim upon which relief can be granted.

Accordingly, it is clear that SMJ has been established, Plaintiffs have established that they suffered an injury traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits. Defendant Guberman recorded a phone conversation with plaintiff, without plaintiffs' consent, which is a direct violation of Fla. Stat. § 934.03. Compl. ¶ 302. The phone conversation between the Paris and Guberman on June 22, 2017 constitutes a "wire communication" pursuant to Florida's Security of Communications Act. Compl. ¶ 303. Defendant Guberman's act of recording the phone conversation without plaintiffs' consent constitutes an "interception" of the parties June 22, 2017, wire communication. Compl. ¶ 304. During the illegal recording on June 22, 2017 between the parties, Defendant Guberman knew, or had reason to know, that plaintiff was physically located within the State of Florida. Compl. ¶ 305.

Defendant Guberman intentionally intercepted, endeavored to intercept, and procured another person to intercept, the electronic communications of Chris Paris, in violation of 18 U.S.C. § 2511(1)(a). Compl. ¶ 310. Guberman was not acting under person not acting under color of law and had no authority to tape the conversation. Compl. ¶ 311. Guberman taped a two-way conversation to which Paris did not consent as he was unaware that he was being recorded at all times. Compl. ¶ 314. Defendants Guberman, Guberman PMC, and Donald Labelle intentionally disclosed the intercepted electronic communications of the Plaintiffs to

8

other third parties, while knowing or having reason to know that the information was obtained

through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a),

Defendants Guberman, Guberman PMC, and Donald Labelle have violated 18 U.S.C. §

2511(1)(c). Compl. ¶ 315 Guberman acted in concert with Labelle in disseminating the illegally

recorded conversation over the world wide web. Compl. ¶ 316.

If for some reason the Court finds merit in Defendants argument, Federal Rule of Civil

Procedure 15(a) states that leave to be replead should "be freely given when justice so requires."

Fed. R. Civ. P. 15(a); *Manning v. Utilities Mut. Insur. Co.*, 254 F.3d 387, 402 (2d Cir. 2001) (on

motion to dismiss, the interests of justice of Rule 15(a) strongly favor allowing a plaintiff to

replead). As the Circuit has taught:

> Rule 15(a) of the Federal Rules of Civil Procedure provides that the court should grant
> leave to amend "freely ⋯ when justice so requires," and the principle that permission
> to amend to state a claim should be freely granted is likewise applicable to dismissals
> for failure to plead an adequate basis for federal jurisdiction. In dismissing a complaint
> for failure to show jurisdiction, the court should heed the admonition of Rule 15 and
> allow amendment 'freely' if it appears at all possible that the plaintiff can correct the
> defect. Thus, in vacating a dismissal with prejudice for, *inter alia,* failure to state a
> claim  and lack of subject matter jurisdiction, we have noted that when a motion to
> dismiss is granted, the usual practice is to grant leave to amend the complaint. ⋯
> Although the decision whether to grant leave to amend is within the discretion of the
> district court,  refusal to grant leave must be based on a valid  ground. Where the
> possibility exists that the defect can be cured and there is no prejudice to the defendant,
> leave to amend at least once should  normally be granted as a matter of course.

*Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 252-253 (2nd Cir. 1991) (citations and internal

quotations  omitted).

## II.    **DEFENDANTS' MOTION TO DISMISS BASED UPON LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(2)**

### A. **Legal Standard**

In deciding a motion to dismiss for lack of personal jurisdiction under Federal Rule of

Civil Procedure 12(b)(2), the Court must undertake a two-part analysis. First, it must determine

8

whether the Florida long-arm statute provides a basis for personal jurisdiction. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). If the statute is satisfied, the court must inquire as to whether sufficient minimum contacts exist between the defendant and Florida so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment. *See id.*

A plaintiff seeking to establish personal jurisdiction over a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). When a defendant challenges personal jurisdiction "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Louis Vuitton*, 736 F.3d at 1350 (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1999)) (See attached Exhibit "A," Declaration of Chris Paris).

The burden, however, does not shift back to the plaintiff when "the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). Where a plaintiff's complaint, supporting affidavits, and documents conflict with a defendant's evidence, the Court must construe all reasonable inferences in favor of the plaintiff. *Id.*

## ARGUMENT

In their Motion to Dismiss, Defendants do not cite any applicable law as a relevant basis for the dismissal. No mention is made of The Florida Long Arm Statute or the due process clause of the 14th amendment. Accordingly, their motion to dismiss fails as being legally insufficient.

In order to be successful, the Defendants would have to successfully demonstrate that (1) there is no statutory basis for exercising personal jurisdiction pursuant to Florida's long-arm statute, Fla. Stat. § 48.193, and (2) exercising jurisdiction over this action would not comport with the Due Process Clause of the Fourteenth Amendment. First, we will address the jurisdictional issue.

**B.  Florida's Long-Arm Statute, in relevant part reads:**

**Florida Statute § 48.193. Acts subjecting person to jurisdiction of courts of state**

   *(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:*

   *(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.*

   *(b) Committing a tortious act within this state.*

   *(c) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:*

   *(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.*

   Under Florida's long-arm statute, Fla. Stat. § 48.193, a non-resident defendant can be subject to personal jurisdiction in two ways. *Atmos Nation LLC v. Alibaba Grp. Holding, LLC*, Case No. 0:15-cv-62104, 2016 WL 1028332, at *2 (S.D. Fla. Mar. 15, 2016). First, a Florida court can exercise general personal jurisdiction – that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida – if the defendant engages in "substantial and not isolated activity" in Florida. *Id.* (citing *Schulman v. Inst. for Shipboard Educ.*, 624 F. App'x 1002, 1005 (11th Cir. 2015)). Second, a Florida court can exercise specific personal jurisdiction – that is, jurisdiction over suits that arise out of or relate

to a defendant's contacts with Florida – if the claim asserted against the defendant arises from the defendant's contacts with Florida, and those contacts fall within one of the nine categories enumerated in section 48.193(1)(a). *Id.*

In *Internet Solutions*, the Florida Supreme Court held, upon the Eleventh Circuit Court of Appeals certifying a question to the Florida Supreme Court, that an out-of-state website operator was subject to personal jurisdiction under section 48.193(1) for defamatory materials that were posted on Defendants' website. *Id.* at 1215. The Florida Supreme Court stated:

> We conclude that allegedly defamatory material about a Florida resident placed on the Web and accessible in Florida constitutes an "electronic communication into Florida" <u>when the material is accessed (or "published") in Florida</u>. In the context of the World Wide Web, given its pervasiveness, an alleged tortfeasor who posts allegedly defamatory material on a website has intentionally made the material almost instantly available everywhere the material is accessible. <u>By posting allegedly defamatory material on the Web about a Florida resident, the poster has directed the communication about a Florida resident to readers worldwide,</u> <u>including potential readers within Florida</u>. When the posting is then accessed by a third party in Florida, the material has been "published" in Florida and the poster has communicated the material "into" Florida, thereby committing the tortious act of defamation within Florida.

*Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201 (Fla. 2010)*, at 1214-15 (emphasis added).

In the instant case, it is clear from the complaint that the Defendants have substantial and not isolated contact with Florida. Daryl Guberman has asserted that he does business all over the United States. Further, his Youtube Channel is accessed by people all over the United States. Accordingly, he is responsible for any defamatory content on his You Tube Channel and, on his website, when he is targeting consumers throughout the United States, inclusive of Florida. Furthermore, Guberman is also is a public figure, who has launched a campaign to become a United States Senator. As a public figure, Guberman must be held accountable for the defamatory statements, which targeted a Florida Resident and targeted viewers in Florida.

8

Labelle also has substantial, systematic, and continuous contacts with Florida. His public relations company, in which he co-owns or shares a common interest with Guberman, boasts many Florida Clients. The PR Company disseminates press releases throughout the State of Florida and throughout the country. Labelle and Guberman are responsible for defamatory contents issued in their press releases.

Furthermore, Defendants Labelle and Guberman availed themselves to jurisdiction in Florida by violating the Florida Long Arm Statute pursuant to section 48.193(1)(f)(1) and 48.193(1)(a)(2), Florida Statutes, by committing tortious acts directed at the Plaintiffs and Causing injury to Plaintiffs within this state arising out of an act or omission by the defendant outside this state while engaged in solicitation or service activities within this state. Defendant Guberman illegally recorded a phone conversation of Paris who was in Florida at the time, without Paris's informed consent, and subsequently disseminating the contents of that recording over the world wide web. Compl. ¶ 24. The contents of the phone conversation also defamed Paris, accusing him of being bankrupt, when this was untrue. Compl. ¶ 25. Labelle, Guberman, and Guberman PMC also harassed Oxebridge clients, such as AM Metals of Orlando FL, and published derogatory information over the world wide web in an attempt to adversely affect Plaintiff's business. Compl. ¶ 26.

### Due Process Clause of Fourteenth Amendment

Since it is clear that the conduct of the Defendants subjects them to Florida's long-arm statute, the Court must next consider whether the exercise of personal jurisdiction over Defendants in this case would offend the Due Process Clause of the Fourteenth Amendment.

11

"The exercise of personal jurisdiction comports with due process if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fairly play and substantial justice.'" *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). With respect to the due process inquiry, the Eleventh Circuit Court of Appeals has set forth a three-part test to determine whether an exercise of specific personal jurisdiction comports with due process.  *Louis Vuitton*, 736 F.3d at 1355. Under this test, the Court must examine:

> (1) Whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Id.* The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, "a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (citing *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

Accordingly, it is clear that 1) the plaintiff's claims "arise out of or relate to" at least one of the defendants' contacts with the forum; (2) and the nonresident defendants "purposefully availed" themselves of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws. Clearly, the third prong is also met even though the Plaintiff does not bear the burden of proving that the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." The Defendants have more than minimum contacts with Florida, they regularly conduct business in Florida and have many clients in Florida. Through their marketing activities, Guberman, Guberman PMC, and

12

Labelle have engaged with clients in the State of Florida, including Collins Manufacturing (Apopka FL), Florida Metal Craft (Winter Garden FL), Innovative Products of Florida (St. Petersburg FL), The Stimpson Company (Pompano Beach FL), and UltraTech International (Jacksonville FL). Compl. ¶ 27. Florida also has an interest in adjudicating this dispute.

The Defendants claims all arise or relate to contact with Florida. In addition, to the substantial contacts referenced above, the Defendants committed tortious act targeting Florida. The substantial and continuous contacts in Florida, as well as the tortious acts targeting a Florida Resident, purposely availed the Defendants the privilege of conducting activities within Florida, thus invoking the state's laws. One example of a tortious act is on June 22 2017, when Paris was conducting research into Board members of the Guberman Companies, it had been uncovered that many such Board members did not exist, or were actually photos of deceased US veterans. Paris contacted Kelly Rak, who was listed by Guberman as a Board member, by phone and asked her for comment for his website/blog. Unbeknownst to Paris, Guberman was physically present during that call and began recording a portion of the call between Paris and Rak without either party's knowledge. Guberman and Labelle then published the partial recording, without permission of either Paris or Rak…" Compl. ¶ 146. Subsequently, Guberman and Levinson disseminated that illegal recording on the world wide web. Compl. ¶ 147. Since this complaint was filed, Guberman republished the illegal recording on his You Tube Channel on multiple occasions. In addition to the covert recording being an illegal act in itself, it defamed Paris by falsely alleging that his company was bankrupt when this was untrue. Compl. ¶ 148. The illegal recording violates Florida and Federal Law and targeted a resident of Florida. Furthermore, Guberman and LaBelle took the

unprecedented action of filing some fifty frivolous claims under the Digital Millenium

Copyright Act against Paris, in an effort to cripple the Oxebridge site. Compl. ¶ 149. The

DMCA claims all targeted a Florida Resident and invoked federal law.

### III.      DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FED. R. CIV. P. 12(B)(6)

While the Defendants alleged that the Plaintiffs didn't properly state a claim, it is clear

from the record that the Plaintiffs did in fact properly stated a Claim for Defamation,

Misrepresentation of Copyright Claims under the Digital Millennium Copyright Act ("DMCA")

17 U.S.C. § 512, Wiretapping, Violation of Florida Statue 934.03, Interception of Electronic

Communications in Violation of The Wiretap Act, 18 U.S.C. § 2511(1)(a), and Disclosure of

intercepted electronic communications in violation of the wiretap act, 18 U.S.C. § 2511(1)(c).

A pleading in a civil action must contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8

pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's

claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512,

(2002). While a complaint "does not need detailed factual allegations," it must provide "more

than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked

assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a

motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true." ); *Iqbal*, 556 U.S. at 678. A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

**ARGUMENT**

Under Florida law, "[d]efamation encompasses both libel and slander. Slander is ordinarily confined to defamatory spoken words, whereas libel pertains to defamatory written statements." *Klayman v. Judicial Watch, Inc.*, 2014 WL 2158418, at *4 & n.2 (S.D. Fla. May 23, 2014) (quotations omitted) (similarly treating the elements of libel and slander, and defamation generally). "To recover for libel or slander under Florida law, a plaintiff must demonstrate that: 1.) the defendant published a false statement; 2.) about the plaintiff; 3.) to a third party; and 4.) the [plaintiff] suffered damages as a result of the publication." *Thompson v. Orange Lake Country Club, Inc.*, 224 F. Supp. 2d 1368, 1376 (M.D. Fla. 2002) (citing *Valencia v. Citibank Int'l*, 728 So. 2d 330, 330 (Fla. 3d DCA 1999)). "A published statement is libelous *per se* if: '(1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession.'" *Klayman*, 2014 WL 2158418 at *2 (quoting *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953) (en banc)).

"The first element of the claim, a false statement of fact, is the *sine qua non* for recovery in a defamation action." *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 (S.D. Fla. 2006) (quoting *Hallmark Builders, Inc. v. Gaylord Broad., Co.*, 733 F. 2d 1461, 1464 (11th Cir. 1984); *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983)) "[A] defamation claim may not be actionable when the alleged defamatory statement is based on non-literal assertions of fact or rhetorical hyperbole that cannot reasonably be interpreted as stating actual facts about an individual." *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002) (quotations omitted). Hyperbolic rhetoric itself negates the impression that the writer seriously maintained her words

16

as statements of fact. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Fortson*, 434 F. Supp. 2d at 1378-79 ("Although rhetorically hyperbolic statements may at first blush appear to be factual, they cannot reasonably be interpreted as stating actual facts about their target.") (citing *Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of Cal. v. Yagman*, 55 F. 3d 1430, 1438 (9th Cir. 1995)).

Since the allegations involve statements published online, the operative claim here is libel. *See Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214-15 (Fla. 2010) (interpreting Florida's long arm statute, held that allegedly defamatory material about a Florida resident placed on the Web and accessible in Florida constitutes an "electronic communication into Florida" when the material is accessed (or "published") in Florida, such that online publication fits within contours of libel).

Construing the allegations in the Complaint in the light most favorable to Plaintiff, the Court cannot conclude at this stage that Defendant's comments are mere rhetoric and cannot constitute defamatory publications. *See, e.g., Presley v. Graham*, 936 F. Supp. 2d 1316, 1325-26 (M.D. Ala. 2013) (finding, at pleading stage, that statement that plaintiff was "a supervisor's nightmare," even if opinion, could be interpreted by a reasonable reader as a fact-based summation). The complaint on its face sufficiently proffers statements by the Defendants, which are untrue, which caused damage to the Plaintiff. In fact, the statements rise to the level of defamation per se since they were disparaging to the Plaintiffs' profession so damages would not even have to be proven.

The Defendants also violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that Plaintiffs infringed Defendants' copyrights. Compl. ¶ 279. Defendants Guberman, Guberman

PMC, and Donald Labelle actually knew of the material falsity of its representations, as it pertains to Plaintiffs. Compl. ¶ 280. 17 U.S.C. § 512(F) states that anyone 1) who misrepresents that a material or activity is infringing, (2) that material or activity was removed or disabled by mistake or misidentification shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized, licensee or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it. Compl. ¶ 281.

Defendant Guberman recorded a phone conversation with plaintiff, without plaintiffs' consent, which is a direct violation of Fla. Stat. § 934.03. Compl. ¶ 302. The phone conversation between the Paris and Guberman on June 22, 2017 constitutes a "wire communication" pursuant to Florida's Security of Communications Act. Compl. ¶ 303. Defendant Guberman's act of recording the phone conversation without plaintiffs' consent constitutes an "interception" of the parties June 22, 2017, wire communication. Compl. ¶ 304. During the illegal recording on June 22, 2017 between the parties, Defendant Guberman knew, or had reason to know, that plaintiff was physically located within the State of Florida. Compl. ¶ 305.

Defendant Guberman intentionally intercepted, endeavored to intercept, and procured another person to intercept, the electronic communications of Chris Paris, in violation of 18 U.S.C. § 2511(1)(a). Compl. ¶ 310. Guberman was not acting under person not acting under color of law and had no authority to tape the conversation. Compl. ¶ 311. Guberman taped a

18

two-way conversation to which Paris did not consent as he was unaware that he was being recorded at all times. Compl. ¶ 314. Defendants Guberman, Guberman PMC, and Donald Labelle intentionally disclosed the intercepted electronic communications of the Plaintiffs to other third parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendants Guberman, Guberman PMC, and Donald Labelle have violated 18 U.S.C. § 2511(1)(c). Compl. ¶ 315 Guberman acted in concert with Labelle in disseminating the illegally recorded conversation over the world wide web. Compl. ¶ 316.

WHEREFORE, the Plaintiffs pray that the Court denies the Motion to Dismiss filed by Daryl Guberman and Donald Labelle, and orders Daryl Guberman and Donald Labelle 10 days to file a responsive pleading, and any other relief which the Court deems appropriate.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and complete copy of this document was electronically filed with the clerk of courts in Middle District of Florida on the 2nd day of May 2019.

Respectfully submitted,

Shrayer Law Firm, LLC.
912 South Andrews Avenue
Fort Lauderdale, FL 33316
Tel.   (954) 601-3732
Email: ghs@shrayerlaw.com


**/s/Glen H. Shrayer**

Glen H. Shrayer, Esq.
Fl Bar No. 57253

19