UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER MARK PARIS, and                    Case No. 8:19-cv-00423
OXEBRIDGE QUALITY RESOURCES
INTERNATIONAL, LLC                              Judge William F. Jung
                                                Magistrate Judge Sean P. Flynn
Plaintiffs

v.

WILLIAM LEVINSON,
LEVINSON PRODUCTIVITY
SYSTEM, PC, a Pennsylvania
Corporation, MARC TIMOTHY
SMITH, individually, and d/b/a
CAYMAN BUSINESS SYSTEMS,
GUBERMAN PMC, a Connecticut
Corporation, DARYL GUBERMAN,
an Individual, DONALD LABELLE, an Individual

Defendants

_____/

**PLAINTIFF CHRIS PARIS AND OXEBRIDGE QUALITY RESOURCES RESPONSE
AND MEMORANDUM IN OPPOSITION TO THE MOTIONS TO DISMISS FILED BY
WILLIAM LEVINSON AND LEVINSON PRODUCTIVITY SYSTEM, PMC**

COMES NOW the Plaintiffs, Christopher Mark Paris and Oxebridge Quality Resources

International, LLC, through undersigned counsel, (collectively herein referred to as "Plaintiffs")

and hereby files this response to the Motions to Dismiss filed by William Levinson and Levinson

Productivity, PC ("Defendants"), and in support thereof states as follows:

**PRELIMINARY STATEMENT**

Plaintiff Chris Paris and Oxebridge Quality Resources (hereinafter "Plaintiffs") submits

this memorandum of law in opposition to the motion by the Defendants to dismiss the complaint.

## FACTUAL BACKGROUND

1. The Plaintiffs filed a lawsuit for COUNT I: DEFAMATION/LIBEL, COUNT II: TORTIOUS INTERFERENCE WITH A BUSINESS INTEREST, COUNT III: COUNT III -- FEDERAL ANTI-CYBERSQUATTING (ANTI-CYBERPIRACY) (15U.S.C. § 1125(D)(1)(A)), COUNT IV - TRADEMARK INFRINGEMENT (15 U.S.C. § 1114), COUNT V FLORIDA UNFAIR COMPETITION, COUNT VI MISREPRESENTATION OF COPYRIGHT CLAIMS UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT ("DMCA") 17 U.S.C. § 512, COUNT VII: ABUSE OF PROCESS, COUNT VIII: WIRETAPPING, VIOLATION OF FLORIDA STAUTE 934.03, COUNT IX - INTERCEPTION OF ELECTRONIC COMMUNICATIONS IN VIOLATION OF THE WIRETAP ACT, 18 U.S.C. § 2511(1)(A), COUNT X: FOR DISCLOSURE OF INTERCEPTED ELECTRONIC COMMUNICATIONS IN VIOLATION OF THE WIRETAP ACT, 18 U.S.C. § 2511(1)(C), COUNT XI (INVASION OF PRIVACY- INTRUSION UPON SECLUSION), and COUNT XII: CIVIL CONSPIRACY.

2. Since 1999 Plaintiff Chris Paris has run Oxebridge, which offers training for the ISO 9000, a family of quality management systems, which helps companies obtain certifications necessary for third party audits within particular industries. Paris also runs a popular blog and news site related to the ISO 9000.

3. Paris is also a published author and has published numerous books on the ISO standards. Paris has been published in third party journals including Quality Systems Update, Japan Today and InfoSec Island, and has been cited in peer-reviewed journals such as the British Medical Journal (BMJ) as well has contributed

2

reporting to mainstream reporting outlets such as Marketwatch, for his work related to ISO certification industry oversight and reporting.

4. Levinson Productivity System, PC is merely an alter ego for William Levinson, so together the two will be treated interchangeably for purposes of this motion.

5. Defendants have launched a continuous and systematic attack on Plaintiffs for a number of years, consisting of continuous defamatory attacks, trademark infringement, and cybersquatting, which avail the Defendants to jurisdiction in Florida.

## STANDARD OF LAW

A motion to dismiss is appropriate when it is demonstrated "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For the purpose of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *Hishon v King & Spaulding*, 467 U.S. 69, 73 (1984). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). When considering a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff. *Timson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008). Additionally, when considering a motion to dismiss the court should consider the plaintiff's allegations as true. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

As courts throughout Florida have consistently held, *Twombly* and *Iqbal* do not change the fundamental analysis that a district court engages in when ruling on a motion to dismiss,

3

*i.e.*, accepting all plausible allegations as true and determining whether the complaint contains,

a short and plain statement of the claim showing that the pleader is entitled to relief." *Smith v.*

*Wm. Wrigley Jr. Co.*, 663 F.Supp.2d 1336, 1341 n. 3 (S.D. Fla. 2009). The issue for

consideration on a motion to dismiss is not whether the plaintiff will ultimately prevail, but

"whether the claimant is entitled to offer evidence to support the claims." *Little v. City of*

*North Miami*, 805 F.2d 962, 965 (11th Cir. 1986). If a defect can be cured by amendment,

leave to amend should be freely granted. *Forman v. Davis*, 371 U.S. 178, 182 (1962); *Ferrell*

*Law, P.A. v. Crescent Miami Center, LLP*, 313 Fed. Appx. 182, 186 (11th Cir. 2008); Fed. R.

Civ. P. 15(a)(2).

      If for some reason the Court finds merit in Defendants argument, Federal Rule of Civil

Procedure 15(a) states that leave to be replead should "be freely given when justice so

requires." Fed. R. Civ. P. 15(a); *Manning v. Utilities Mut. Insur. Co.*, 254 F.3d 387, 402 (2d

Cir. 2001) (on motion to dismiss, the interests of justice of Rule 15(a) strongly favor allowing

a plaintiff to replead). As the Circuit has taught:

> Rule 15(a) of the Federal Rules of Civil Procedure provides that the court should
> grant leave to amend "freely ⋯ when justice so requires," and the principle that
> permission to amend to state a claim should be freely granted is likewise applicable
> to dismissals for failure to plead an adequate basis for federal jurisdiction. In
> dismissing a complaint for failure to show jurisdiction, the court should heed the
> admonition of Rule 15 and allow amendment 'freely' if it appears at all possible that
> the plaintiff can correct the defect. Thus, in vacating a dismissal with prejudice for,
> *inter alia,* failure to state a claim and lack of subject matter jurisdiction, we have
> noted that when a motion to dismiss is granted, the usual practice is to grant leave to
> amend the complaint. ⋯ Although the decision whether to grant leave to amend is
> within the discretion of the district court, refusal to grant leave must be based on a
> valid ground. Where the possibility exists that the defect can be cured and there is no
> prejudice to the defendant, leave to amend at least once should normally be granted
> as a matter of course.

*Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 252-253 (2nd Cir. 1991) (citations and internal

quotations omitted).

In the alternative, if the Court is even considering dismissing on the basis of lack of personal jurisdiction, the Plaintiffs would request to take jurisdictional discovery. Precedent indicates that jurisdictional discovery is highly favored before resolving Federal Rule of Civil Procedure 12(b)(2) motions to dismiss for want of personal jurisdiction. 2007 WL 4287662, *2 (citing Eaton, 692 F.2d at 731); Majd-Pour v. Georgiana Cmty. Hosp., Inc., 724 F.2d 901, 903 (11th Cir. 1984) ("[a]lthough the plaintiff bears the burden of proving the court′s jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction"); Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1367 (11th Cir. 1997) (a motion to dismiss for lack of personal jurisdiction may require limited discovery so that a meaningful ruling can be made); Blanco v. Carigulf Lines, 632 F.2d 656, 657 (5th Cir. 1980) (dismissal was error where defendants had not responded to plaintiff′s interrogatories).

## I. DEFENDANTS' MOTION TO DISMISS BASED UPON LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(2)

### A. Legal Standard

In deciding a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the Court must undertake a two-part analysis. First, it must determine whether the Florida long-arm statute provides a basis for personal jurisdiction. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). If the statute is satisfied, the court must inquire as to whether sufficient minimum contacts exist between the defendant and Florida so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment. *See id.*

A plaintiff seeking to establish personal jurisdiction over a nonresident defendant

5

"bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). When a defendant challenges personal jurisdiction "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Louis Vuitton*, 736 F.3d at 1350 (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1999)) (See attached Exhibit "A," Declaration of Chris Paris).

The burden, however, does not shift back to the plaintiff when "the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). Where a plaintiff's complaint, supporting affidavits, and documents conflict with a defendant's evidence, the Court must construe all reasonable inferences in favor of the plaintiff. *Id.*

## ARGUMENT

In order to be successful, the Defendants would have to successfully demonstrate that (1) there is no statutory basis for exercising personal jurisdiction pursuant to Florida's long-arm statute, Fla. Stat. § 48.193, and (2) exercising jurisdiction over this action would not comport with the Due Process Clause of the Fourteenth Amendment. First, we will address the jurisdictional issue.

### B. Florida's Long-Arm Statute, in relevant part reads:

**Florida Statute § 48.193. Acts subjecting person to jurisdiction of courts of state**

*(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the*

6

*jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:*

*(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.*

*(b) Committing a tortious act within this state.*

*(c) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:*

*(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.*

Under Florida's long-arm statute, Fla. Stat. § 48.193, a non-resident defendant can be subject to personal jurisdiction in two ways. *Atmos Nation LLC v. Alibaba Grp. Holding, LLC*, Case No. 0:15-cv-62104, 2016 WL 1028332, at *2 (S.D. Fla. Mar. 15, 2016). First, a Florida court can exercise general personal jurisdiction – that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida – if the defendant engages in "substantial and not isolated activity" in Florida. *Id.* (citing *Schulman v. Inst. for Shipboard Educ.*, 624 F. App'x 1002, 1005 (11th Cir. 2015)). Second, a Florida court can exercise specific personal jurisdiction – that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida – if the claim asserted against the defendant arises from the defendant's contacts with Florida, and those contacts fall within one of the nine categories enumerated in section 48.193(1)(a). *Id.*

In *Internet Solutions*, the Florida Supreme Court held, upon the Eleventh Circuit Court of Appeals certifying a question to the Florida Supreme Court, that an out-of-state website operator was subject to personal jurisdiction under section 48.193(1) for defamatory materials that were posted on Defendants' website. *Id.* at 1215. The Florida Supreme Court stated:

> We conclude that allegedly defamatory material about a Florida resident placed on the Web and accessible in Florida constitutes an "electronic

communication into Florida" <u>when the material is accessed (or "published") in Florida</u>. In the context of the World Wide Web, given its pervasiveness, an alleged tortfeasor who posts allegedly defamatory material on a website has intentionally made the material almost instantly available everywhere the material is accessible. <u>By posting allegedly defamatory material on the Web about a Florida resident, the poster has directed the communication about a Florida resident to readers worldwide, including potential readers within Florida</u>. When the posting is then accessed by a third party in Florida, the material has been "published" in Florida and the poster has communicated the material "into" Florida, thereby committing the tortious act of defamation within Florida.

*Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201 (Fla. 2010)*, at 1214-15 (emphasis added).

**The Florida cases that address personal jurisdiction in the context of the Internet often cite to the Florida Supreme Court case of *Wendt v. Horowitz*, 822 So. 2d 1252 (Fla. 2002), as a starting point for analysis. In *Wendt*, the Florida Supreme Court provided that "in order to commit a tortious act in Florida, a defendant's physical presence is not required." The *Wendt* court further expressly held that "telephonic, electronic, or written communications into Florida may form the basis of personal jurisdiction under section 48.193(1)(b), if the alleged cause of action arises from the communications." Similarly, Florida courts have held that emails into Florida give rise to personal jurisdiction under F.S. §48.193(1)(b). Likewise, allegedly defamatory comments posted in an Internet chat room accessed by Florida residents also can give rise to personal jurisdiction in a defamation action.[48] In *Internet Solutions Corporation v. Marshall*, 39 So. 3d 1201 (Fla. 2010), the Florida Supreme Court stated that "relevant case law reveals that courts interpreting Florida law in the context of the Web have applied differing approaches." In Zippo Mfg. Co. v. Zippo DOT Com, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), the court held that the 3,000 internet users within the forum state who subscribed to the defendant's website services satisfied the test for personal**

8

jurisdiction. Zippo, 952 F. Supp. at 1125-1126.

The Defendants availed themselves to jurisdiction in Florida by violating the Florida Long Arm Statute pursuant to section 48.193(1)(f)(1) and 48.193(1)(a)(2), Florida Statutes, by committing tortious acts directed at the Plaintiffs and Causing injury to Plaintiffs within this state arising out of an act or omission by the defendant outside this state while engaged in solicitation or service activities within this state. Levinson has many ties with Florida and has misrepresented his relationship with the state in his signed Affidavit of William Levinson, In Support of Motion to Dismiss for Lack of Personal Jurisdiction (Docket 25-2) before this Court (See attached Exhibit "A" Declaration of Chris Paris Decl. ¶ 5). Levinson has systematic and continuous contacts with Florida. He has received pecuniary benefits by virtue of his contacts with Florida. Decl. ¶ 6. The purpose of Levinson doing seminars or speeches in Florida is commercial in nature. Decl. ¶ 9. Levinson then wrote an article specifically about his appearance at the Orlando AQI event for the May 2016 edition of Quality Digest magazine. In that article, Levinson discussed his appearance at the Orlando event, calling it a "professional conference" and "networking opportunity. Decl. ¶ 11.

In a March 2017 website page entitled "Oxebridge Promotes Illegal Tax Deductions," Levinson promoted four separate events in Florida related to ISO 9001 and AS9100 training, specifically to harm the attendance of a seminar of Paris on a subject which Paris conducting in Cocoa Beach at that time, called an Oxebridge "Braindump." In those publications, Levinson wrote, "All these reputable alternatives to the "Braindump Course" on AS9100 Revision D are internationally recognized and, unlike this individual, do not encourage their customers to take illegal tax deductions." Decl. ¶ 17. In addition, to this being part of a systematic and continuous

9

business presence in Florida, it is tortious in nature. It is defamatory content that targeted a Florida Resident. This certainly meets the standard set in The *Wendt* court further expressly held that "telephonic, electronic, or written communications into Florida may form the basis of personal jurisdiction under section 48.193(1)(b), if the alleged cause of action arises from the communications." The complaint outlines numerous instances in which the libelous writings of Levinson caused harm and targeted Paris, a Florida Resident. In promoting those events, Levinson made false claims about causing reputational injury and harm defaming me specifically to Florida based clients who may have attended the Cocoa Beach event. Decl. ¶ 18. Levinson targeted specific clients of the Plaintiffs' with an email campaign intended to cause me to lose Florida clients. Over the course of approximately six months in 2017, Levinson targeted multiple Oxebridge clients located in Florida for his email campaign, including:

- TechSource Florida – Altamonte Springs FL

- Puch Manufacturing, Orlando FL

- Magnus Hi-Tech, Melbourne FL

- Allied Engineering, Deltona FL

- IGT/Gtech, Lakeland FL

- Euroavionics USA, Sarasota FL Decl. ¶ 19.

Those emails included defamatory statements made about Paris and Oxebridge, including repeated false accusations of crimes such as copyright infringement. Those emails included defamatory statements made about Paris and Oxebridge, including repeated false accusations of crimes such as copyright infringement. Decl. ¶ 20. In an official "pre-suit notice" sent to Paris on November 13,

2017, Levinson explained his rationale for the email campaign, writing, "I needed you to have fewer O-fans," presumably "O-fans" refers to Oxebridge clients Decl. ¶ 21. Levinson then contacted a reporter for the Florida blog "St. Petersblog" and convinced them to run an article entitled "Conservative Businessman Accuses Tampa Rival of Faking Liberal Outrage to Steal Business." Decl. ¶ 23. This article contained many falsehoods and denied Paris the opportunity to defend himself, while purposely availing itself of an audience in Florida. Decl. ¶ 23. Levinson wrote on multiple occasions, on his various anti-Oxebridge defamation sites including Osteinfo.net, that he had repeatedly contacted Florida police about Paris, even going so far as to reference Paris' family. Decl. ¶ 24.

On January 19, 2018, Paris initiated a complaint with the World Intellectual Property Organization ("WIPO") Arbitration and Mediation Center, alleging that Levinson's registering of the Oxebridge.biz domain was done in bad faith and infringed on Paris trademark and intellectual property. Complaint ¶ 66. In a February 22, 2018 decision, WIPO found that (i) the disputed domain name is identical or confusingly similar to a trademark or service mark in which the complainant has rights; and (ii) the respondent has no rights or legitimate interests in respect of the disputed domain name; and (iii) the disputed domain name has been registered and is being used in bad faith. Compl. ¶ 68. WIPO went on to note that "The Panel finds it inconsistent with good faith, within the meaning of the Policy, to use a domain name misleadingly similar to a competitor's trademark for a website largely devoted to disparaging the competitor's business." Compl. ¶ 70. Furthermore, throughout January and February of 2017, Levinson tweeted multiple tweets on his Twitter account @levinson_bill falsely claiming

that Oxebridge is an "bankrupt empty storefront," then posting links to the personal bankruptcy filings of Paris which included personally identifiable information, including his address, names of relatives, contact information and financial disclosures; the statements libelous in that Oxebridge has never filed bankruptcy. Compl. ¶ 80. In summary, there is no question that both the systematic and continuous contacts of Levinson in Florida and the multiple tortious acts targeting a Florida Resident, subject the Defendants to the Florida Long Arm Statute.

### Due Process Clause of Fourteenth Amendment

Since it is clear that the conduct of the Defendants subjects them to Florida's long-arm statute, the Court must next consider whether the exercise of personal jurisdiction over Defendants in this case would offend the Due Process Clause of the Fourteenth Amendment. "The exercise of personal jurisdiction comports with due process if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fairly play and substantial justice.'" *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). With respect to the due process inquiry, the Eleventh Circuit Court of Appeals has set forth a three-part test to determine whether an exercise of specific personal jurisdiction comports with due process. *Louis Vuitton*, 736 F.3d at 1355. Under this test, the Court must examine:

> (1) Whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Id.* The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does

so, "a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (citing *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

Accordingly, it is clear that 1) the plaintiffs' claims "arise out of or relate to" at least one of the defendants' contacts with the forum; (2) and the nonresident defendants "purposefully availed" themselves of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws. Clearly, the third prong is also met even though the Plaintiffs do not bear the burden of proving that the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." All the claims against Levinson unquestionably arise from contacts with Florida and his multiple tortious acts, as even WIPO found he was committing trademark infringement and cybersquatting, which targeted a Florida Resident. Levinson simply didn't care if he was infringing on a registered trademark for the purpose of disparaging and defaming his competition. By submitting an affidavit that largely lacks candor Levinson has demonstrated that he has no respect for the judicial process. The substantial and continuous contacts in Florida, as well as the tortious acts targeting a Florida Resident, purposely avail Levinson the privilege of conducting activities within Florida, thus invoking the state's laws.

Furthermore, Levinson already has legal counsel and initiated a lawsuit in Florida. Decl. ¶ 25. He cannot simultaneously represent that he will somehow be burdened by having to defend a suit in Florida. However, the state lawsuit he filed, case number 17-CA-003804, does not incorporate all the federal crimes for which this Court is the proper venue, or does it incapsulate the civil conspiracy, which Levinson has partook in order to defame the Plaintiffs.

13

In addition, Levinson also runs an interactive website and even sells products in Florida. Decl. ¶ 26, ¶ 27.

In conclusion, Levinson makes money off conducting seminars and selling products in Florida; he disparaged and defamed a Florida Resident on websites accessed by Florida Residents; and he infringed on trademarks of a Florida Resident for which he was sanctioned by WIPO. He simply cannot assert in good faith that he hasn't "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws. He even stated, "I needed you to have fewer O-fans," presumably "O-fans" refers to the malicious by which he intends to make the Plaintiffs suffer. Accordingly, subjecting the Defendants to suit in Florida comports with the "traditional notions of fair play and substantial justice."

WHEREFORE, the Plaintiffs pray that the Court denies the Motion to Dismiss filed by Defendants, and orders 10 days to file a responsive pleading, and any other relief which the Court deems appropriate.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and complete copy of this document was electronically filed with the clerk of courts in Middle District of Florida on the 10th day of May 2019.

Respectfully submitted,

Shrayer Law Firm, LLC.
912 South Andrews Avenue
Fort Lauderdale, FL 33316
Tel.   (954) 601-3732
Email: ghs@shrayerlaw.com


**/s/Glen H. Shrayer**

Glen H. Shrayer, Esq.
Fl Bar No. 57253

15