**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CHRISTOPHER MARK PARIS and
OXEBRIDGE QUALITY
RESOURCES
INTERNATIONAL, LLC,

Plaintiffs,

v. Case No: 8:19-cv-00423-T-02SPF

WILLIAM LEVINSON, LEVINSON
PRODUCTIVITY SYSTEMS, PC, a
Pennsylvania corporation, GUBERMAN PMC,
a Connecticut corporation, DARYL
GUBERMAN, and DONALD LABELLE,

Defendants.

---

**ORDER**

This matter comes to the Court on motions to dismiss filed by Defendants Levinson, Levinson Productivity Systems, PC (LPS), Guberman, and LaBelle. Dkts. 8, 9, 20, 25.[1] Plaintiffs Paris and Oxebridge Quality Resources International, LLC ("Oxebridge") have responded in opposition. Dkts. 32, 37. The Court heard argument on May 31, 2019. Dkt. 48. Defendants Guberman, Guberman PMC

[1] Plaintiffs have voluntarily dismissed without prejudice their claims against Defendant Smith, individually, and d/b/a/ Cayman Business Systems. Dkt. 36. As such, Smith's motion to dismiss is due to be denied as moot. Dkt. 14.

(GPMC), and LaBelle did not attend the noticed hearing. *Id.* The Court DENIES the motions.

**BACKGROUND**

Plaintiff Paris is a resident of Tampa, Florida and founder of Oxebridge, a Florida corporation with its principal place of business in the same city. Dkt. 1 ¶¶ 11-12, 45, 53-55. Defendant Levinson is a Pennsylvania resident who operates LPS, a Pennsylvania corporation, to facilitate his consulting business. Dkt. 25 ¶ 4; Dkt. 25-2. Defendant Guberman is domiciled in Connecticut and is the owner and operator of GPMC, which is also registered in Connecticut. Dkt. 47 ¶ 4. Defendant LaBelle is a resident of Massachusetts. Dkt. 9 ¶ 4. The parties are all involved in the international standardization community, and this suit stems from an ongoing feud that has mostly taken place over the internet.

Plaintiffs' Complaint alleges that Defendants have engaged in tortious conduct including trademark infringement, civil conspiracy, defamation, and interference with business relationships. Dkt. 1. All but one of the Defendants have moved to dismiss the Complaint for lack of personal jurisdiction.[2] Defendants LaBelle and Guberman also move to dismiss the counts against them for lack of

[2] Defendant Guberman and GPMC filed a joint motion to dismiss. Dkt. 8. The Court struck the pro se motion as to GPMC because Local Rule 2.03 provides that "[a] corporation may appear and be heard only through counsel admitted to practice in the Court pursuant to Rule 2.01 or Rule 2.02." Dkt. 10. On July 2, 2019, GPMC informed the Court that it retained counsel, though the counsel's membership to practice in the Middle District of Florida has lapsed. Dkt. 54. No appearance to date has occurred for GPMC. It is in risk of imminent default.

subject matter jurisdiction and for Plaintiffs' failure to provide a short and plain statement of the claim. Fed. R. Civ. P. 8(a), 12(b)(1).[3]

## DISCUSSION

The Court first determines that it has personal jurisdiction over Defendants. The Court then finds that dismissal for lack of subject matter jurisdiction and under Rule 8 of the Federal Rules of Civil Procedure is inappropriate.

I. Personal Jurisdiction

Plaintiff bears the burden of "establishing a prima facie case of personal jurisdiction over a nonresident defendant." *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-21897-civ, 2013 WL 1100028, at *2 (S.D. Fla. Mar. 15, 2013) (citation omitted). Where a defendant submits affidavits to the contrary, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Polskie Linie Oceaniczne v. Seasafe Transport A/S,* 795 F.2d 968, 972 (11th Cir. 1986) (citation omitted). "[If] a plaintiff proffers no competent evidence to establish jurisdiction in opposition to the denials of the jurisdictional allegations contained in the defendant's affidavit, a district court may find the

[3] Guberman's and LaBelle's request to seal documents in this case is denied for their failure to comply with Local Rule 1.09. The rule requires a party to move to seal a paper. The motion must identify and describe the paper proposed for sealing, state the necessity for filing and sealing the paper, explain why "a means other than sealing is unavailable or unsatisfactory," propose a duration for the seal, and provide a memorandum of legal authority to support the seal. Defendants did not comply with this rule.

defendant's unrebutted denials sufficient to negate the plaintiff's jurisdictional allegations." *Zapata*, 2013 WL 1100028, at *2 (citation omitted).

The Court's inquiry is two-fold: "(1) whether personal jurisdiction exists over the nonresident defendant . . . under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citation omitted). The Court finds that jurisdiction exists under the state long-arm statute and that exercise of jurisdiction would not violate due process.

1. Florida's Long-Arm Statute

Under Florida's long-arm statute, a nonresident submits to specific jurisdiction by, among other things, "[c]omitting a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). Because the Court finds that Plaintiff has satisfied subsection (a)(2) as to all Defendants, the Court need not determine whether it possesses general jurisdiction or specific jurisdiction under an alternate basis.

The gravamen of Plaintiffs' claims is the allegedly defamatory statements Defendants posted online. These statements aver that, among other things, Paris is bankrupt, that Oxebridge does not exist, and that Paris supports terrorism. Dkt. 1 ¶ 61-62. Plaintiff also alleges that Levinson registered the copycat domain name www.oxebridge.biz and other sites that contained defamatory statements against

Plaintiffs. *Id.* ¶ 63. Defamatory material was also posted on other websites. *Id.* ¶ 76.

According to Plaintiff, Guberman and LaBelle "often reposted information originally posted by Levinson or Smith, in order to disparage and defame Paris." *Id.* ¶ 145. Plaintiffs also allege that Defendants, along with former Defendant Smith, "have worked together reposting defamatory material against the Plaintiffs, commenting on the defamatory posts and adding additional defamatory material." *Id.* ¶ 42. Furthermore, Guberman and LaBelle allegedly disseminated over "180 'press releases,' videos, postings and publications defaming Paris, which were circulated internationally through LaBelle's network of press release distribution companies," including online. *Id.* ¶¶ 157, 160. Guberman and LaBelle have also allegedly posted defamatory content on Youtube and LinkedIn, among other websites. *Id.* ¶¶ 161, 165.

Plaintiffs further allege that Guberman and LaBelle harassed Oxebridge clients, including those based in Florida, causing the loss of Florida clients. *Id.* ¶ 26. According to the Plaintiffs, Guberman also recorded a phone conversation between Paris in Florida and a third party, the contents of which Guberman and LaBelle distributed online. *Id.* ¶¶ 24, 146. That recording contained allegedly defamatory content, including that Oxebridge was bankrupt. *Id.* ¶ 148.

As it relates to section 48.193(1)(a)(2), Florida Statutes, the Florida Supreme Court has stated:

> [A]llegedly defamatory material about a Florida resident placed on the Web and accessible in Florida constitutes an "electronic communication into Florida" when the material is accessed (or "published") in Florida. In the context of the World Wide Web, given its pervasiveness, an alleged tortfeasor who posts allegedly defamatory material on a website has intentionally made the material almost instantly available everywhere the material is accessible. By posting allegedly defamatory material on the Web about a Florida resident, the poster has directed the communication about a Florida resident to readers worldwide, including potential readers within Florida. When the posting is then accessed by a third party in Florida, the material has been "published" in Florida and the poster has communicated the material "into" Florida, thereby committing the tortious act of defamation within Florida.

*Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214-15 (Fla. 2010); *see also Catalyst Pharm., Inc. v. Fullerton*, 748 F. App'x 944, 947-48 (11th Cir. 2018) (finding that "mere accessibility" does not satisfy section 48.193(1)(a)(2)).

While most if not all of the statements published on the internet are undeniably "accessible" in Florida, Plaintiffs also allege that at least one of the challenged statements suggesting the insolvency of Oxebridge—made during the phone conversation recorded and published by Guberman and LaBelle—has been accessed by clients in Florida and has damaged Paris's reputation. Dkt. 32-1 at 4-5. It is thus of little import for the long-arm statute that Guberman or LaBelle might

not have known that Paris was in Florida at the time of the conversation. Dkt. 47 at 2.

Plaintiffs also allege that Levinson and LPS have operated websites with names confusingly similar to the website of Oxebridge, a Florida corporation (*e.g.*, www.oxebridge.biz). This was a dispute heard by the World Intellectual Property Organization, and forms the basis of Plaintiffs' trademark infringement claims. Dkt. 1 ¶¶ 63-73, 245-46; *see also Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008) (finding online trademark infringement of Florida resident's name satisfies Florida long-arm statute).

Plaintiffs additionally allege that while Paris was scheduled to provide a 2017 training seminar in Cocoa Beach, Florida, Levinson used some of the above websites to promote competing training events "with the false claim that [Levinson's] courses are 'internationally recognized and, unlike [Paris], do not encourage their customers to take illegal tax deductions.'" Dkt. 1 ¶ 118; Dkt. 37-1 ¶¶ 17-18. Plaintiffs suggest that this statement referred to—and defamed—Paris's Florida training event. Seemingly in response to the allegation, Levinson declares that, while he did promote "training seminars offered in Florida by SAE International, Bureau Veritas, BSI and SAI Global on [his] website," he "did not receive any compensation or endorsements" and does not have any financial interest in those entities. Dkt. 25-2 ¶¶ 22-24. But Levinson's statements do not

affect whether, as alleged, Levinson committed a tortious act in Florida. Plaintiffs further bolster the record with a sample email from Levinson's alleged defamatory "email campaign" to a Florida-based entity that apparently Paris had listed as a business contact or reference. Dkt. 37-1 at 8-9; Dkt. 37-3.

In their motions and with very similar language, Guberman and LaBelle deny many of Plaintiffs' allegations. Dkts. 8-9. For example, they deny that they illegally recorded the phone conversation and that they posted defamatory information about Paris. And Guberman denies harassing—and even speaking "directly to or communicat[ing] by phone or email" with—AM Metals, one of Plaintiffs' purported Florida-based clients. Dkt. 47 at 2; *see also* Dkt. 1 ¶ 26.

These broad, conclusory denials of the allegations—especially provided in a motion and not an affidavit[4]—are insufficient to avoid personal jurisdiction. And, in any event, the underlying question of whether any published content was defamatory is not before the Court where Plaintiff has "substantiate[d] the jurisdictional allegations in the complaint by affidavits or other competent proof." *See Polskie Linie Oceaniczne*, 795 F.2d at 972. This is true even if any surreptitious recording were lawful, so long as any false statements in the recording were published to a third party in Florida. Defendants' general

---

[4] Guberman later filed an affidavit to support his motion to dismiss, but again the denials lack the specificity required to refute the allegations, affidavits, and other competent proof set forth by Plaintiffs. Dkt. 47.

suggestion that Plaintiff does not have Florida clients or customers is insufficient to overcome the allegations and competent evidence that Plaintiffs have set forth. The Court finds section 48.193(1)(a)(2), Florida Statutes, satisfied as to all Defendants.[5]

2. Due Process

Turning to constitutional due process, specific personal jurisdiction cases require a court to "examine[] (1) whether the plaintiff s claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355. "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (citation and quotation marks omitted).

---

[5] Contrary to LPS's argument, the Court does not at this stage deem it necessary to distinguish between the conduct of LPS and Levinson. LPS admits that it is "wholly owned by Levinson as its President, since 2001, solely for the purpose of facilitating Levinson's profession as a consultant." Dkt. 25 at 2. It is not clear to the Court that, in promoting other training events in Florida and in contacting a listed reference of Paris, Levinson was not working for LPS. Levinson further represented LPS when he visited Florida to attend a technical conference and attend two appearances on behalf of himself and LPS as plaintiffs in litigation against Paris in Hillsborough County. *Id.* at 3.

1. Arising out of or Relating to

The inquiry into whether Plaintiffs' claims "arise out of or relate to at least one of [Defendants'] contacts with the forum" focuses on "the direct causal relationship between the defendant, the forum, and the litigation." *Louis Vuitton*, 736 F.3d at 1355-56 (citations omitted). Here, Plaintiffs' claims arise out of or relate to Defendants' contacts with the forum. This includes publication of allegedly defamatory material about Florida residents that is accessible in Florida, including statements that were accessed by third parties in Florida. In terms of Levinson's conduct, this also includes making allegedly defamatory statements directly to Plaintiffs' Florida-based clients and in connection with a competing training seminar in Florida.

2. Purposeful Availment

A defendant's conduct constitutes purposeful availment under the *Calder*[6] effects test where his tort "(1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Louis Vuitton*, 736 F.3d at 1356-57 (citation omitted). The Supreme Court has clarified that "in determining whether the tortious act was expressly aimed at the forum state under the *Calder* effects test, a 'mere injury to a forum resident is not a sufficient connection to the forum.'" *Estes v. Rodin*, 259 So.

[6] *Calder v. Jones*, 465 U.S. 783 (1984).

3d 183, 193 (Fla. 3d DCA 2018) (quoting *Walden v. Fiore*, 571 U.S. 277, 289-90 (2014)). The "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.[7]

In challenging purposeful availment—a component of constitutional due process—Defendants Levinson and LPS rely chiefly on *Estes*, a state court case involving only defamatory statements made in a closed group on a social media website. The court in *Estes* first noted that unrefuted allegations that Florida residents in the closed group had accessed the statements was sufficient to satisfy section 48.193(1)(a)(2), Florida Statutes. 259 So. 3d at 191. Looking to *Walden*, the court then found that "because the only link between Appellees and Florida is the alleged injury to Appellants, Appellants failed to satisfy the purposeful availment prong of the due process analysis." *Id.* at 194.

But an injury can still be relevant insofar as it may connect a plaintiff to a forum in a meaningful way, and certainly the conduct alleged here is more extensive than the statements in a closed social media group in *Estes*. And *Walden* itself did not involve internet-based conduct, but rather a suit in Nevada against a

---

[7] Alternatively, the traditional purposeful availment analysis looks to whether a defendant's contacts with the forum state "(1) are related to the plaintiff's cause of action; (2) involve some act by which he purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1356-57 (citations omitted). The Court need not run through this analysis in light of its finding under *Calder*.

law enforcement officer who stopped two Nevada residents at an airport in Atlanta. 571 U.S. at 289. The officer's actions in Georgia "did not create sufficient contacts with Nevada simply because [the officer] allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.*

Here, though they are the ones to cite *Estes*, Levinson and LPS present the easier case. Defamation is an intentional tort, *Lozada v. Hobby Lobby Stores, Inc.*, 702 F. App'x 904, 909 (11th Cir. 2017), and, in addition to postings on various websites (including those that allegedly infringe upon Plaintiffs' trademark), Levinson allegedly made defamatory statements to a Florida-based client or reference of Paris. Statements were also made concerning a competing training seminar in Florida. This constitutes activity directed at the forum state.

Though unnecessary to the Court's analysis, it is also worth noting that Levinson has presented at a professional conference for standards in Florida. In a subsequent declaration, Paris states that Levinson intentionally downplayed the significance of this presentation. Dkt. 37-1 at 3-6. Moreover, Levinson and LPS are plaintiffs in an ongoing lawsuit against Plaintiffs in Hillsborough County, Dkt. 21-1 ¶ 20; Dkt. 20-2 at 3—purposeful availment indeed.

As for Guberman and LaBelle, it bears repeating that the many statements at issue concerned Florida residents, were accessible in Florida, and some of them were accessed by a third party in Florida. To use the language of *Walden*,

Guberman and LaBelle "create[d] contacts with the forum State," 571 U.S. at 291, when they allegedly (possibly illegally) recorded a phone conversation of a Florida resident, posted that recording—along with other defamatory statements—on various generally accessible internet sites, and some of the statements were accessed by third parties in Florida. *See Lovelady* 544 F.3d at 1285-88 (finding purposeful availment for intentional tort that targeted Florida resident and resident suffered injury in the state); *see also Tobinick v. Novella*, No. 9:14-CV-80781, 2015 WL 328236, at *7 (S.D. Fla. Jan. 23, 2015) (citing *Lovelady* in finding purposeful availment in defamation case).

It was moreover foreseeable that Defendants' conduct would lead to Plaintiffs' injuries. Indeed, as alleged, that seemed to be the very purpose of the conduct. *See, e.g.*, Dkt. 1 ¶ 138. The Courts thus finds that all the Defendants have purposefully availed themselves of the forum state of Florida.

3. Fair Play and Substantial Justice

Though Plaintiffs have satisfied the first two prongs of the due process inquiry, the Court nonetheless notes that to determine whether the exercise of personal jurisdiction comports with fair play and substantial justice the following considerations are relevant: "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving

the dispute." *Louis Vuitton*, 736 F.3d at 1358 (citation and quotation marks omitted).

Put simply, no Defendant has demonstrated a substantial burden sufficient to overcome Plaintiffs' interest in their chosen forum, or Florida's interest in protecting its residents against tortious conduct. Though Connecticut, Massachusetts, and Pennsylvania do not border Florida, nor are they foreign countries with a different legal system or official language. What is more, one of the Defendants has filed suit in Hillsborough County and has made court appearances. Dkt. 20-2 at 3. Exercising jurisdiction as to any Defendant does not offend substantial justice and fair play.

II.     Subject Matter Jurisdiction

Defendants Guberman and LaBelle also argue that the Complaint "contains allegations regarding several defendants unknown to me. Therefore, it is impossible for me to answer allegations made about multiple defendants in multiple[] states representing multiple companies in which I have no business or professional relationship. I motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)." Dkt. 8 at 2; Dkt. 9 at 2. Defendant appears to raise a facial attack on subject matter jurisdiction, which limits the Court's analysis to the Complaint. *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

Defendants seem to argue that because they are not familiar with some of the other Defendants (though which ones is unclear), they will be unable to meaningfully respond to Plaintiffs' allegations in their Answers. In responding to a pleading, however, a party "that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state[.]" Fed. R. Civ. P. 8(b)(5). In any event, Defendants provide no authority for the proposition that this warrants dismissal with prejudice for lack of subject matter jurisdiction. The motion is denied.

III. Short and Plain Statement

The same Defendants also move in passing for the Court to dismiss the Complaint "as prolix and against the rules for a short plain statement of the claim." Dkt. 8 at 2; Dkt. 9 at 1. Though the Complaint is relatively long at 64 pages (with subsequent exhibits totaling nearly 400 pages, Dkt. 4) and does contain potentially irrelevant factual allegations and legal authority, this is not a reason to dismiss the Complaint. *See Bell v. Fla. Highway Patrol*, 325 F. App'x 758, 759-60 (11th Cir. 2009) (citations omitted) (finding that though the complaint contained "many confusing citations and allegations" and was "no paragon of notice pleading," it was "good enough," and that a court "may dismiss a complaint for failure to comply with Rule 8(a) only if the plaintiff can prove no facts that would entitle him to relief"). The motion is denied.

## CONCLUSION

The Court denies the motions to dismiss the Complaint. Dkts. 8, 9, 20, 25. In light of Plaintiffs' notice of voluntary dismissal, Dkt. 36, all counts against Defendant Smith in the Complaint are dismissed without prejudice. Dkt. 1. Defendant Smith's motion to dismiss is denied as moot. Dkt. 14.

**DONE AND ORDERED** at Tampa, Florida, on July 9, 2019.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record
Pro se parties