UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER MARK PARIS, and
OXEBRIDGE QUALITY RESOURCES
INTERNATIONAL, LLC

   Plaintiffs

v.

GUBERMAN PMC, a Connecticut
Corporation, DARYL GUBERMAN,
an Individual, DONALD LABELLE,
an Individual

   Defendants

Case No. 8:19-cv-00423

Judge William F. Jung
Magistrate Judge Sean P. Flynn

_____/

## MOTION FOR ENTRY OF FINAL JUDGMENT

Plaintiff, Christopher Mark Paris ("Paris") hereby moves for entry of a final default judgment against Defendants GUBERMAN PMC, a Connecticut Corporation, DARYL GUBERMAN, an Individual, DONALD LABELLE, an Individual pursuant to Federal Rule of Civil Procedure 37(b), which states that a court may "render a default judgment against the disobedient party" if the party fails to obey a discovery order, on the grounds set forth below.

### FACTUAL BACKGROUND

1.     Oxebridge Quality Resources was started by Christopher Paris in 1999. Since that time Oxebridge has grown in both size and scope of services, serving larger organizations and utilizing some of the best minds in ISO 9000 implementation and consulting.

2.     The ISO 9000 is a family of quality management systems standards is designed to help organizations ensure that they meet the needs of customers and other stakeholders while meeting

1

statutory and regulatory requirements related to a product or service. Essentially, the certification process serves as a compliance standard for third party audits within particular industries.

3. Oxebridge modernized the traditional practice, making it much quicker to obtain certification levels.

4. Oxebridge specializes in aerospace, with companies such as Lufthansa, JetBlue, and Space X having traditionally been among its core clients.

5. Oxebridge trains companies on how to obtain the requisite certifications.

6. In some instances, these certifications allow for companies to obtain lucrative contracts with the federal government, which would otherwise be unattainable,

7. In addition, Oxebridge acts as watchdog and whistleblower in the aerospace quality field.

8. Paris runs the website www.oxebridge.com, which essentially functions as a media outlet, with news articles and opinion pieces written by Paris, which are at times satirical or humorous in nature, and at other times serious reports on industry news, practices or controversies. Paris has provided independent reporting on the industry to the US Dept of Defense, the US Food and Drug Administration, NASA and other government agencies.

9. Paris first registered and did business as Oxebridge in 1999.

10. On October 17, 2006 Paris registered the trademark for Oxebridge Quality Resources, Inc. While this mark subsequently lapsed for not timely filing paperwork with the USPTO, Paris continued exclusively using the trademark and held common law trademark rights therein at all times.

11. On December 12, 2017 registered the trademark for Oxebridge Quality Resources, International LLC ("Oxebridge Registered Trademark").

12. Paris is also a published author and has published numerous books on the ISO standards.

13. Paris has been published in third party journals including Quality Systems Update, Japan Today and InfoSec Island, and has been cited in peer-reviewed journals such as the British Medical Journal (BMJ) as well has contributed reporting go mainstream reporting outlets such as Marketwatch, for his work related to ISO certification industry oversight and reporting.

14. Paris also maintained employment with Pulse Medical of Blue Ridge GA from 2010 through 2018, in the position of Quality Manager.

15. In recent years, Paris has suffered a precipitous loss of business due to the defamatory and illegal conduct of the Defendants GUBERMAN PMC, a Connecticut Corporation, DARYL GUBERMAN, an Individual, DONALD LABELLE (hereinafter the "Defendants").

## PROCEDURAL HISTORY

15. On February 18, 2019, Plaintiffs Christopher Mark Paris filed suit against the Defendants. Counts against WILLIAM LEVINSON and LEVINSON PRODUCTIVITY SYSTEMS, PC were dismissed pursuant to a confidential settlement agreement, and Marc Smith was voluntarily dismissed from the case without prejudice.

16. This lawsuit consists of the following remaining counts against the Defendants: COUNT I: DEFAMATION/LIBEL, COUNT II: TORTIOUS INTERFERENCE WITH A BUSINESS INTEREST, COUNT VI MISREPRESENTATION OF COPYRIGHT CLAIMS UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT ("DMCA") 17 U.S.C. § 512, COUNT VII: ABUSE OF PROCESS, COUNT VIII: WIRETAPPING, VIOLATION OF FLORIDA STAUTE 934.03, COUNT IX - INTERCEPTION OF ELECTRONIC COMMUNICATIONS IN VIOLATION OF THE WIRETAP ACT, 18 U.S.C. § 2511(1)(A), COUNT X: FOR DISCLOSURE OF INTERCEPTED ELECTRONIC

COMMUNICATIONS IN VIOLATION OF THE WIRETAP ACT, 18 U.S.C. § 2511(1)(C), COUNT XI (INVASION OF PRIVACY-INTRUSION UPON SECLUSION), and COUNT XII: CIVIL CONSPIRACY.

17. The Defendants have made a mockery of the judicial process throughout these proceedings continuing to blatantly ignore this rulings of this Court.

18. On 14, 2019, The Court entered an order to show cause why Guberman PMC should not be defaulted for failing to secure counsel. (Doc. 49).

19. On Jun 20, 2019, the court ruled that "The response to the Order to Show Cause (Dkt. 50) appears to not understand that a corporation may not appear or be heard without legal counsel. Accordingly, the Clerk is ordered to ENTER A CLERK'S DEFAULT against Guberman PMC, LLC on July 1, 2019 unless legal counsel has appeared for this entity by that date." (Doc. 51).

20. On July 11, 2019, a clerk's default was entered against Guberman PMC (Doc. 58).

21. It was not until August 2, 2019 that counsel Bruce Minnick entered an appearance (doc. 61) and until August 4, 2019 that counsel filed a motion to vacate that default (doc. 63).

22. On August 7, 2019, the Court set aside the default (doc. 64).

23. On July 9, 2019 the Court entered an ORDER denying the Defendants Motion to Dismiss. Despite the Motions to Dismiss being denied the Defendants refused to respect the jurisdiction of the Court and continued to make a mockery of the judicial proceedings.

24. On Dec 18, 2019, Defendant Donald Labelle filed a second Motion to Dismiss, stating "Plaintiffs Claim Lacking Factual Insufficiency and for Lacking Personal Jurisdiction and Memorandum of Law." (Doc. 82). On December 20, 2019, Daryl Guberman also filed a second Motion to Dismiss for "Lack of Subject Matter and Personal Jurisdiction and Plaintiff's False and Misleading Allegations." (Doc. 83). The Court subsequently denied

both motions.

25. On January 1, 2020, the undersigned counsel filed a Motion for Order to Show Cause since the Defendants refused to coordinate mediation dates as required by the Court Scheduling Order. (Doc. 87).

26. On January 3, 2019, the Court entered an Order to Show Cause Against the Defendants, which stated in part, "Jurisdiction having been established, Defendants are not free to disregard this Court's orders without peril." The Order also noted that the Defendants Prior to the hearing, Guberman and LaBelle each emailed a brief to chambers indicating that "personal jurisdiction has been challenged and must be proven before I can proceed." The Court noted that questions regarding jurisdiction had already been resolved by the Court. (Doc. 93).

27. Subsequently, the Court held a telephonic hearing on January 7, 2020. Defendant Labelle and Guberman failed to appear. Also, counsel for Guberman PMC failed to even call in, despite all parties receiving sufficient notice. The Court called counsel for Guberman, PMC who stated he was unaware that he was required to call in.

28. On January 9, 2020, Defendant Guberman filed a Motion asserting that jurisdiction must be proven before he participates in mediation (Doc. 94)

29. On January 28, 2020, a Show Cause Hearing was held in which none of the Defendants appeared. Plaintiffs' Counsel and the Plaintiff both appeared in person (Doc. 100).

30. On January 28, 2020, Plaintiff filed a Motion for Contempt against the Defendants seeking $4,637.50 in legal fees and travel time for 13.25 hours at $350 an hour, and $2,422.50 in associated costs and expenses, in total, Plaintiffs requested $7,060.00 from the Defendants jointly and severally. (Doc. 102).

31. On January 30, 2020, Magistrate Judge Sean Flynn entered a Certification of Facts

Demonstrating Contempt (Doc. 103).

32. On February 3, 2020, Defendant Guberman filed an affidavit which again challenged the jurisdiction of the Court (Doc. 105).

33. On February 11, 2020, Defendant Labelle also filed a motion challenging the jurisdiction of the Court (Doc. 106).

34. On February 14, 2020, Defendant Guberman filed yet another motion challenging the Court's jurisdiction (Doc. 107).

35. On February 21, 2020, Judge William Jung issued an order granting the Plaintiffs' Motion for Contempt (Doc. 102) and defaulting the Defendants.

**MEMORANDUM OF LAW**

**The Defendants Total Disregard For The Federal Rules Of Civil Procedure Justifies a Substantial Damage Award**

The Defendants total disregard for the Federal Rules of Civil Procedure is further grounds for this Court to award the Plaintiffs the full statutory damages. *See Castworld Products, Inc.,* 219 F.R.D. at 501. Although this case is differentiated from *Castworld Products* in the respect that the Plaintiffs are not seeking statutory damages, it is analogous in the respect that it justifies a large damage award in part because the Defendants have demonstrated an ongoing lack of cooperation and total disregard for the judicial process. Likewise, in order to deterrence, compensation, and The Defendants disregard for the judicial process – Plaintiffs asks the Court to award damages in the amount of 1.6 million dollars in compensatory damages for the voluminous defamatory materials posted all over the internet and another $500,000.00 in punitive damages, jointly and severally against the Defendants.

*PARTICULARITY SUPPORTING AWARD*

Plaintiffs and their counsel have spent considerable time and resources in their attempt to

prosecute and resolve the matters against the Defendants and the damages incurred have been substantial. Accordingly, the Plaintiffs should be entitled to the full scope of their damages as entitled by law. The Plaintiffs have established the following counts against the Defendants.

**COUNT I: DEFAMATION/LIBEL**

The Defendants posted numerous articles online on a multitude of websites as delineated below which resulted in cancelled contracts and lost bids that have substantial damaged the business and professional reputation of the Defendants who have been damaged by defamation per se. The defendants also posted numerous YouTube videos defaming the Plaintiffs. The Defendants have accused the Plaintiffs of terrorism, fraud, copyright infringement, and being bankrupt. The crimes alleged were untrue and were alleged with malice with the specific intent to damage the reputation of a business competitor.

Express malice exists when the motive for the statement is to intentionally injure the party against whom the statement is made. Nodar v. Galbreath, 462 So. 2d 803 (Fla. 1984). It is not enough to show that the speaker has malice or general hostility toward the person claiming defamation, there must be a primary motivation to injure. To prove express malice there must be at least ill will, hostility and evil intention to defame and injure. See Nodar and Boehm v. Am. Bankers Ins. Grp., Inc., 557 So. 2d 91, 94 (Fla. 3rd DCA 1990). In this instance it is clear that the acts of the Defendants were not merely negligent, but they acted with malice, repeated false and injurious claims over a number of years which resulted in substantial damages to the Plaintiffs business as evidenced below:

36. The LaBelle website at IndustrialPR.net then published a false and defamatory account which falsely claimed "Oxebridge.com Owner Chris Paris Flees To Offshore Web Host After Receiving Over 50 Complaints of Copyright Violations." The article accused Oxebridge's business practices as consisting of "copyright infringers, white supremacist,

7

terrorist sympathizers, illegal pharmacies, pornography sites and other shady businesses." This site included the following defamatory and false claims (Complaint ¶ 177).

37. At some time in 2018, the Labelle owned and/or controlled website mfgpartners.net ran a similar press release which featured false and defamatory statements about Oxebridge and Paris, accusing the Paris of antisemitism, racism, and criminal acts. The LaBelle article also falsely asserted that Oxebidge had no clients, and "doesn't seem to be making any honest money at all," (Complaint ¶ 178).

38. The website continued to defame the Plaintiffs by stating: "Oxebridge.com is under investigation by the American Board of Accredited Certifications, and is on the Scam Alert List of IndustrialPR for telemarketing fraud. Reports show Attorney Generals in several states, including Florida, Connecticut and New York has received complaints about Christopher Paris and his fraudulent operation Oxebridge Quality Resources. AMSN could not find a single client endorsement on the Oxebridge.com website, nor does it appear to have any customers or business references. In fact, it doesn't seem to be making any honest money at all. However, we did what seems like an endless number of complaints about Oxebridge Quality Resources International and Chris Paris all over the Internet. Simply Google "Oxebridge complaints" and you'll see complaint after complaint about the seedy company. Mr. Paris, a white man, comes off as a very envious and disturbed individual in the articles he writes and publishes on his website. He often writes in a distasteful manner about Jews, African Americans, and woman in leadership roles. He has disgustingly accused a Jewish businessman of using his own mother's death to promote himself in effort to demeanor the man among his family, friends, and business associates. He has verbally attacked an African American woman for being "unqualified" for a leadership role. Christopher Paris has gone as far as contacting the employer of an Hispanic gentlemen in

effort to get the man fired. The entire business model of Oxebridge.com seems to be attacking the reputation of successful business people, especially Jews, minorities, and woman. Would you do business with such a person?" (Complaint ¶ 178).

39. In January, Guberman and LaBelle filed a false and defamatory complaint to the US Dept. of Justice, falsely asserting that Paris lied on his bankruptcy filings. Guberman and Labelle admitted to filing this claim in an email dated January 26, 2017, sent to Paris. The Dept. of Justice opened an investigation into Paris based on the claims, but eventually found that the claims were without merit and the complaint was dropped. (Complaint ¶ 179).

40. Guberman and Labelle published a false and defamatory post on the Labelle-owned website mfgpartners.net which made a host of false and defamatory accusations, inclusive of the following: "Please beware of Oxebridge Quality Resources International, an offshore enterprise operating a bogus certification and accreditation scheme. Mr Paris and his web host has been reported to the Federal Trade Commission (FTC) for copyright infringement and the theft of personal photographs, logos, corporate certificates, and other copyrighted material stolen from various websites. Oxebridge.com is under investigation by the American Board of Accredited Certifications, and is on the Scam Alert List of IndustrialPR for telemarketing fraud. Reports show Attorney Generals in several states, including Florida, Connecticut and New York has received complaints about Christopher Paris and his fraudulent operation Oxebridge Quality Resources. AMSN could not find a single client endorsement on the Oxebridge.com website, nor does it appear to have any customers or business references. In fact, it doesn't seem to be making any honest money at all. However, we did what seems like an endless number of complaints about Oxebridge Quality Resources International and Chris Paris all over the Internet. Simply Google "Oxebridge complaints" and you'll see complaint after complaint about the seedy company.

Paris, a white man, comes off as a very envious and disturbed individual in the articles he writes and publishes on his website. He often writes in a distasteful manner about Jews, African Americans, and woman in leadership roles. He has disgustingly accused a Jewish businessman of using his own mother's death to promote himself in effort to demeanor the man among his family, friends, and business associates. He has verbally attacked an African American woman for being "unqualified" for a leadership role. Christopher Paris has gone as far as contacting the employer of an Hispanic gentlemen in effort to get the man fired. The entire business model of Oxebridge.com seems to be attacking the reputation of successful business people, especially Jews, minorities, and woman. Would you do business with such a person?" Every single statement therein is false. The original post also linked to defamatory material published by Defendant Smith on Google Groups." (Complaint ¶ 187).

### COUNT II: TORTIOUS INTERFERENCE WITH A BUSINESS INTEREST

41. Paris had business relationships with companies that were subject to third party audits for compliance standards. (Complaint ¶ 238).

42. The plaintiffs' business relationships were adversely affected by the writings, videos, and misrepresentational information of Labelle, Guberman, and Guberman PMC. (Complaint ¶ 239).

43. Comments from Labelle, Guberman, and Guberman PMC concern the desire to damage Paris's business. (Complaint ¶ 240).

44. Labelle, Guberman, and Guberman PMC had no right to interfere with Paris' business relationships and wrongfully interfered with those business relationships out of malice, bad faith, and hatred. (Complaint ¶ 241).

45. The Plaintiffs have suffered damage as a result of the interference with Oxebridges' pre-existing business relationships. (Complaint ¶ 242).

## COUNT VI MISREPRESENTATION OF COPYRIGHT CLAIMS UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT ("DMCA") 17 U.S.C. § 512

46. Defendants Guberman and LaBelle took the unprecedented action of filing some fifty frivolous claims under the Digital Millenium Copyright Act against Paris, in an effort to cripple the Oxebridge site (Complaint ¶ 149).

47. The DMCA Notices filed by the Guberman and Labelle lacked a factual basis and were filed maliciously in order to gain an unfair advantage over a business competitor (Complaint ¶ 150). Guberman and LaBelle did not own, nor were acting with authorization of the copyright holder in order to file the DMCA claims (Complaint ¶ 151).

48. Subsequently, Guberman and LaBelle boasted online, through press releases and YouTube videos, of their DMCA filings, and how they successfully forced Paris to switch web hosting companies. (Complaint ¶ 152).

49. Furthermore, Guberman and LaBelle disseminated over 180 "press releases," videos, postings and publications defaming Paris, which were circulated internationally through LaBelle's network of press release distribution companies. The list of known URLs including defamatory content (Complaint ¶ 157).

50. Throughout May, June and July of 2017, Labelle and Guberman filed as many as 30 false and fraudulent Digital Millennium Copyright Act (DMCA) notices to the hosting company of the Oxebridge website, Digital Ocean. See samples under The complaints were signed under penalty of perjury by Guberman or LaBelle. (Complaint ¶ 170).

51. In some of the DMCA complaints, Guberman and Labelle claimed to be the copyright owner of content on the Oxebridge website, including publicly disseminated photos of prominent public figures. (Complaint ¶ 171). In other DMCA complaints Guberman and Labelle claimed to by the copyright owner of editorial graphics created personally by Paris. (Complaint ¶ 172).

52. Abiding by the law, Digital Ocean forced Oxebridge to address each claim individually, or face having the Oxebridge site shut down, regardless of whether the claims had merit. Paris was forced to address approximately 25 of the claims, but Guberman and LaBelle continued to submit more, using a "copy and paste" method to submit them in bulk. Paris was forced to change hosting companies to Inka Hosting, to avoid having the site shut down by Digital Ocean for not timely responding to the voluminous DMCA notices filed by Guberman and Labelle. (Complaint ¶ 173).

53. Guberman and LaBelle then sent the same contested DMCA notices to InkaHosting, who then notified Paris that they would also have to shut the Oxebridge site down. As a result, Paris was forced to switch to Black.Host, an offshore hosting company that "ignores" DMCA notices. This hosting company was located, by all available knowledge, in Bulgaria, which resulted in the Oxebridge website operating at sub-par speeds, with limited ability to present the normal content. Payments to Black.Host could only be made by Bitcoin, further complicating the simple process of paying a monthly hosting fee. Guberman and LaBelle then ran press releases announcing that Paris had "fled to an offshore hosting company."

### COUNT VII: ABUSE OF PROCESS

54. Defendants Guberman, Guberman PMC, and Donald Labelle used the DMCA process, including a false sworn statement, to accomplish a purpose for which the DMCA notice and takedown procedure was not designed. (Complaint ¶ 292).

55. The false and perjurious DMCA notice was used by the Defendants Guberman, Guberman PMC, and Donald Labelle to suppress criticism, and not to address any copyright concerns. (Complaint ¶ 293).

56. The false and perjurious DMCA notices were filed in order to seek to extract an advantage over the Plaintiffs and/or to suppress criticism, and not to address any actual copyright

claims. (Complaint ¶ 294).

57. Defendants Guberman, Guberman PMC, and Donald Labelle deliberately perverted this particular legal process for its own benefit and in order to suppress the Plaintiffs' rights. (Complaint ¶ 295).

58. Defendants Guberman, Guberman PMC, and Donald Labelle were willful and wanton and were committed with deliberate disregard for the law, including the copyright act and laws prohibiting perjury. (Complaint ¶ 296).

59. As a direct and proximate result of Defendants Guberman, Guberman PMC, and Donald Labelle actions, Plaintiffs have been injured in an amount to be determined at trial. (Complaint ¶ 297).

**COUNT VIII: WIRETAPPING, VIOLATION OF FLORIDA STAUTE 934.03, AGAINST DARYL GUBERMAN**

60. Section 2511 of the Wiretap Act prohibits individuals from intercepting a communication or procuring another to intercept a communication. 18 U.S.C. § 2511; Bartnicki v. Vopper, 532 U.S. 514, 523 (2001). Any individual whose communication is "intercepted, disclosed, or intentionally used" can bring a civil action for injunctive relief and monetary damages. 18 U.S.C. § 2520; Kwok Sze v. Pui-Ling Pang, 529 F. App'x 196, 199 (3d Cir. 2013). (Complaint ¶ 300).

61. A plaintiff pleads a prima facie case under the Wiretap Act by alleging that the defendant: (1) intentionally (2) intercepted, endeavored to intercept, or procured another person to intercept (3) the contents of (4) any wire, electronic, or oral communication, (5) using a device. In re Nickelodeon Consumer Privacy Litig., No. 15-1441, slip op. at 25 (3d Cir. Jun. 27, 2016); In re Google Inc. Cookie Placement Consumer Privacy Litig., 806 F.3d 125, 135 (3d Cir. 2015). (Complaint ¶ 301).

62. Defendant Guberman recorded a phone conversation with plaintiff, without plaintiffs'

consent, which is a direct violation of Fla. Stat. § 934.03. (Complaint ¶ 302).

63. The phone conversation between the Paris and Guberman on June 22, 2017 constitutes a "wire communication" pursuant to Florida's Security of Communications Act. (Complaint ¶ 303).

64. Defendant Guberman's act of recording the phone conversation without plaintiffs' consent constitutes an "interception" of the parties June 22, 2017, wire communication. (Complaint ¶ 304).

65. During the illegal recording on June 22, 2017 between the parties, Defendant Guberman knew, or had reason to know, that plaintiff was physically located within the State of Florida. (Complaint ¶ 305).

66. Defendants Guberman's act of recording the June 22, 2017 wire communication between the parties was intentional. (Complaint ¶ 306).

67. As a result of Defendant Guberman's interception of the parties' communication, plaintiffs have suffered damages. (Complaint ¶ 307).

**COUNT IX: INTERCEPTION OF ELECTRONIC COMMUNICATIONS IN VIOLATION OF THE WIRETAP ACT, 18 U.S.C. § 2511(1)(A) AGAINST DEFENDANT GUBERMAN**

68. Defendant Guberman intentionally intercepted, endeavored to intercept, and procured another person to intercept, the electronic communications of Chris Paris, in violation of 18 U.S.C. § 2511(1)(a). (Complaint ¶ 314).

69. Guberman was not acting under person not acting under color of law and had no authority to tape the conversation. (Complaint ¶ 311).

**COUNT X: FOR DISCLOSURE OF INTERCEPTED ELECTRONIC COMMUNICATIONS IN VIOLATION OF THE WIRETAP ACT, 18 U.S.C. § 2511(1)(C) AGAINST DEFENDANTS GUBERMAN, GUBERMAN PMC, AND DONALD LABELLE**

70. Guberman taped a two-way conversation to which Paris did not consent as he was unaware

14

that he was being recorded at all times. (Complaint ¶ 314).

71. Defendants Guberman, Guberman PMC, and Donald Labelle intentionally disclosed the intercepted electronic communications of the Plaintiffs to other third parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendants Guberman, Guberman PMC, and Donald Labelle have violated 18 U.S.C. § 2511(1)(c). (Complaint ¶ 315).

72. Guberman acted in concert with Labelle in disseminating the illegally recorded conversation over the world wide web. (Complaint ¶ 316).

### COUNT XI: (INVASION OF PRIVACY-INTRUSION UPON SECLUSION) AGAINST DEFENDANTS GUBERMAN, GUBERMAN PMC, AND DONALD LABELLE

73. Defendant Guberman's act of intercepting the wire communication between a third party and plaintiff constitutes an invasion of privacy in violation of Florida law. (Complaint ¶ 319).

74. Through the act of intentionally intercepting communications and subsequently posting the defamatory material online Defendants Guberman, Guberman PMC, and Donald Labelle deliberately intruded upon the seclusion of Chris Paris in violation of Florida law. (Complaint ¶ 320).

75. Plaintiff Paris has a recognized right of privacy in his wire communications. Defendant Guberman's act of intentionally intercepting the wire communication is illegal pursuant to Florida's Security of Communications Act (Fla. Stat.§ 934.03). (Complaint ¶ 321).

76. The act of then publishing and disclosing the contents of the illegally taped conversation also violated Plaintiff Paris' right to privacy. (Complaint ¶ 322).

77. Therefore, Defendants Guberman, Guberman PMC, and Donald Labelle conduct is

objectively unreasonable and offensive so as to support a claim for invasion of privacy. (Complaint ¶ 323).

78. Defendants Guberman has intercepted and published other wire communications between the third party and plaintiffs, although publication is not required to support a claim of invasion of privacy based upon intrusion upon seclusion. (Complaint ¶ 324).

79. As a result of defendant's Guberman, Guberman PMC, and Donald Labelle intentional invasion of his right of privacy, plaintiff has suffered damages. (Complaint ¶ 325).

**COUNT XII: CIVIL CONSPIRACY AGAINST WILLIAM LEVINSON, LEVINSON PRODUCTIVITY SYSTEM, PC, MARC SMITH, DARYL GUBERMAN, GUBERMAN PMC, AND DONALD LABELLE**

80. The elements of a civil conspiracy are:  (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy.   Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam County, 616 So.2d 562 (Fla. 5th DCA 1993). Generally an actionable conspiracy requires an actionable underlying tort or wrong. See Florida Fern Growers Ass'n, Inc.;  Wright v. Yurko, 446 So.2d 1162 (Fla. 5th DCA 1984). (Complaint ¶ 328).

81. However, an alternative basis for a civil conspiracy claim exists where the plaintiff can show some "peculiar power of coercion" possessed by the conspirators by virtue of their combination, which an individual acting alone does not possess. See Churruca v. Miami Jai-Alai, Inc., 353 So.2d 547 (Fla.1977). (Complaint ¶ 329).

82. In this case the Defendants all worked together with the common goal of tortuously interfering with the Plaintiffs and spreading misinformation and lies all over the Internet. (Complaint ¶ 330).

83. The Defendants acted unlawfully by disseminating lies that disparaged Paris all over the

Internet. They all took overt acts in furtherance of that conspiracy. (Complaint ¶ 331).

## ENTITLEMENT TO DAMAGES

84. Regarding Count I, DEFAMATION/LIBEL the Plaintiffs are entitled to the full amount of damages as the false statements were defamatory per se and related directly to the Plaintiffs business reputation.

85. Regarding Count VI, 17 U.S.C. §512(f). In the alternative, Plaintiffs are entitled to damages due to the bad faith actions of Defendants Guberman, Guberman PMC, and Donald Labelle. Pursuant to Count VII, Abuse of Process, the Plaintiffs and are entitled to recover their attorney's fees and any and all costs as well. Pursuant to Count VIII and, Fla. Stat.§ 934.10, Count IX 18 U.S.C. § 2511(1)(A), and Count X WIRETAP ACT, 18 U.S.C. § 2511(1)(C), plaintiff is entitled to an injunction barring defendant from intercepting additional wire communications, an order to remove from the world wide web the recording on June 22, 2017, as well as compensatory damages, punitive damages, attorneys' fees and costs.

86. The list of infringing URLs to be removed is hereby attached as "Exhibit "A").

87. Pursuant to Count XI and Count XII Plaintiffs are entitled to collect damages from The Defendants, pre and post judgment interest, on each award, and such other relief that the Court determines appropriate.

## DAMAGE AWARD

88. Plaintiffs hereby seek $1,600,000.00 dollars in compensatory damages, another $500,000.00 in punitive damages for the continued bad faith conduct of the Defendants. The Plaintiffs lost numerous big clients and accounts as a result of pervasive defamatory

and illegal conduct on the part of the Defendants who have acted in flagrant disregard for the law (See attached Affidavit of Paris, Exhibit "B").

89. The Defendants and the respective web hosts and registrars should also be ordered to remove the following URLs from the Internet which contain defamatory content about the Plaintiffs. Because of the massive distribution and breadth of the defamatory sites, the Plaintiffs reserve the right to submit a second set of URLs for removal if any previously-published defamatory material is uncovered during or after the removal of the first set.

90. Furthermore, it is requested that the illegally taped conversation with Paris disseminated all over the internet is ordered to be removed as well.

91. In accordance with Federal Rule of Civil Procedure 37(b) Plaintiffs request that the Court enter a Final Default Judgment against the Defendants on all claims for relief in the Complaint, and thus granting damages, injunctive relief, attorney's fees and costs, as set forth above and in the proposed order.

92. Under Federal Rule of Civil Procedure 69(a), the procedure for executing judgment "must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Thus, Florida procedure for executing judgment applies here.

93. Florida Rule of Civil Procedure 1.560 allows judgment creditors to obtain discovery from judgment debtors when collecting judgment. Fla. R. Civ. P. 1.560(a). Rule 1.560 also provides:

> **Fact Information Sheet**. In addition to any discovery available to a judgment creditor under this rule, the court, at the request of the judgment creditor, shall order the judgment debtor or debtors to complete form 1.977, including all required attachments, within 45 days of the order or such other reasonable time as determined by the court. Failure to obey the order may be considered contempt of court.

Fla. R. Civ. P. 1.560(b).

94. There being no just reason for delay, the entry of this Final Default Judgment by the United States District Court constitutes entry of final judgment as to all remaining claims asserted in this action by the Plaintiff in this lawsuit pursuant to Federal Rule of Civil Procedure 37(b).

WHEREFORE, Plaintiffs Oxebridge Quality Resources, LLC and Christopher Paris respectfully requests that the Honorable Court grant this motion, and enter a default judgment against the Defendants; issue a permanent injunction against the Defendants from ever referring to the Plaintiffs again in any forum or publication, whether under their own names, anonymously or pseudonymously, through any third party, and whether referring to the Plaintiffs directly or implicitly; instructing the removal of all the websites in the attached spreadsheet which are hereby incorporated by reference (as Exhibit "A"); ordering a public retraction and apology to be published on each of the Guberman and LaBelle websites, and circulated through the IndustrialPR press release network within 30 days of the Order; order 2.1 million dollars in total damages awarded to the Plaintiffs jointly and severally against the Defendants GUBERMAN PMC, DARYL GUBERMAN, and, DONALD LABELLE, reserving on attorneys' fees and costs. The Court shall retain jurisdiction to enforce this Judgment and Permanent Injunction. If the Defendants shall be alleged to have breached the terms of the Judgment and Permanent Injunction, Plaintiffs shall have the right to reopen this matter upon motion filed and heard on an expedited basis. If this matter is so reopened, Plaintiff may pursue any and all remedies it may have against the Defendants, their successors in interest and assigns, and any persons or business entities working in concert with the Defendants GUBERMAN PMC, DARYL GUBERMAN, and, DONALD LABELLE, in addition to ordering whatever other or further relief that the Honorable Court deems just in this matter.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and complete copy of this document was electronically filed with the clerk of courts in Middle District of Florida on the 22nd day of April 2020.

Respectfully submitted,

Shrayer Law Firm, LLC.
912 South Andrews Avenue
Fort Lauderdale, FL 33316
Tel.   (954) 601-3732
Email: ghs@shrayerlaw.com


**/s/Glen H. Shrayer**

Glen H. Shrayer, Esq.
Fl Bar No. 57253